UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

EPHRAIM WIEDER,

                  Plaintiff,

        v.

TALARIS THERAPEUTICS, INC., GEOFF
MACKAY, GAURAV D. SHAH, SAPNA
SRIVASTAVA, MARK D. MCDADE,
SANDIP AGARWALA, KAREN L. SMITH,
SUZANNE T. ILDSTAD, and FRANCOIS
NADER,

                  Defendants.

------------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. _____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

       Plaintiff Ephraim Wieder ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

       1.     This action is brought by Plaintiff against Talaris Therapeutics, Inc. ("Talaris" or the "Company") and the members of Talaris's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Talaris will merge with Tourmaline Bio, Inc. ("Tourmaline") through Talaris's subsidiary Terrain Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On June 22, 2023, Talaris and Tourmaline issued a joint press release announcing their entry into an Agreement and Plan of Merger to combine Talaris with Tourmaline (the "Merger Agreement").  Under the terms of the Merger Agreement, Tourmaline stockholders immediately prior to the Merger are expected to own approximately 78.7% of the combined company and Talaris stockholders immediately prior to the Merger are expected to own approximately 21.3% of the combined company, each on a fully diluted basis.

3.      On September 15, 2023, Talaris filed a Form 424B3 proxy statement/prospectus (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Talaris stockholders vote in favor of the Proposed Transaction, omits, or misrepresents material information concerning, among other things: (i) Talaris management's financial projections for Tourmaline; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Leerink Partners LLC ("Leerink"); (iii) Leerink's potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Talaris stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.      In short, unless remedied, Talaris's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Talaris's common stock trades on the Nasdaq Global Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Talaris.

9.      Defendant Talaris is a Delaware corporation, with its principal executive offices located at 93 Worcester St., Wellesley, MA 02481.  Talaris operates as a late-clinical stage cell therapy company in the United States.  Talaris's shares trade on the Nasdaq Global Market under the ticker symbol "TALS."

10.     Defendant Geoff MacKay ("MacKay") has been a director of the Company since November 2018.

11.     Defendant Gaurav D. Shah ("Shah") has been a director of the Company since December 2020.

12.     Defendant Sapna Srivastava ("Srivastava") has been a director of the Company since January 2021.

13.    Defendant Mark D. McDade ("McDade") has been a director of the Company since November 2018.

14.    Defendant Sandip Agarwala ("Agarwala") has been a director of the Company at all relevant times.

15.    Defendant Karen L. Smith ("Smith") has been a director of the Company at all relevant times.

16.    Defendant Suzanne T. Ildstad ("Ildstad") has been a director of the Company at all relevant times.

17.    Defendant Francois Nader ("Nader") has been Chairman of the Board and a director of the Company since November 2018.

18.    Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.    Tourmaline is a late-stage clinical biotechnology company driven by its mission to develop transformative medicines that dramatically improve the lives of patients with life-altering immune diseases.

20.    Merger Sub is a Delaware corporation and a direct, wholly owned subsidiary of Talaris.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.    Prior to its review of strategic alternatives, Talaris was a cell therapy company developing an innovative method of allogeneic hematopoietic stem cell transplantation ("allo-HSCT"), called Facilitated Allo-HSCT Therapy.

**The Proposed Transaction**

22.     On June 22, 2023, Talaris and Tourmaline issued a joint press release announcing

the Proposed Transaction, which states, in relevant part:

> BOSTON and NEW YORK, June 22, 2023 (GLOBE NEWSWIRE) -- Talaris
> Therapeutics, Inc. (Nasdaq: TALS) ("Talaris") and Tourmaline Bio, Inc.
> ("Tourmaline"), a late-stage clinical biotechnology company developing
> transformative medicines to dramatically improve the lives of patients with life-
> altering immune diseases, today announced that the companies have entered into a
> definitive agreement under which Tourmaline will combine with Talaris in an all-
> stock transaction (the "Merger").  The combined company will focus on advancing
> Tourmaline's lead program, TOUR006, a potentially best-in-class anti-IL-6
> antibody, for the treatment of thyroid eye disease (TED) and atherosclerotic
> cardiovascular disease (ASCVD).  Upon completion of the Merger, the combined
> company will operate under the name Tourmaline Bio, Inc. and trade on the Nasdaq
> under the ticker symbol "TRML."  In addition, Talaris anticipates making a cash
> dividend of up to approximately $64.8 million to its stockholders prior to the
> closing of the Merger.
>
> In support of the Merger, Tourmaline has entered into an agreement for a $75
> million private placement with a syndicate of new and existing institutional life
> sciences investors including Acuta Capital Partners, Affinity Asset Advisors,
> Braidwell LP, Cowen Healthcare Investments, Deep Track Capital, Great Point
> Partners, LLC, KVP Capital, Logos Capital, Paradigm BioCapital, Qiming Venture
> Partners USA, RA Capital Management, LP, StemPoint Capital LP, TCGX, Vivo
> Capital, and other undisclosed investors.  Tourmaline previously completed a $112
> million Series A financing in 2023 that was co-led by Deep Track Capital, Cowen
> Healthcare Investments, and TCGX.  Tourmaline was founded in September 2021
> and initially financed in May 2022 by Hydra, KVP Capital, Petrichor, and QVT
> Family Office.
>
> "We are thrilled to be entering into this transaction with Talaris," said Sandeep
> Kulkarni, MD, Chief Executive Officer of Tourmaline.  "We have assembled a
> world-class team with deep experience developing antibodies for immune disorders
> and are now on the verge of beginning our Phase 2 development campaign in
> multiple indications.  We believe that TOUR006 has best-in-class potential and
> could be a transformative treatment option for millions of patients suffering from
> immune disorders.  This merger and the support from leading life sciences investors
> will allow us to accelerate our development plans in TED, heart disease, and
> potentially other indications."
>
> "The Talaris Board of Directors conducted a review of strategic alternatives to
> identify paths to provide value to our stockholders.  We believe the transaction we
> are announcing today with Tourmaline, together with the expected cash dividend

of up to approximately $64.8 million, presents a compelling opportunity for our shareholders," said Mary Kay Fenton, Interim Chief Executive Officer of Talaris. "TOUR006 is a promising clinical asset with near-term, value-creating milestone opportunities. We look forward to its future success."

Tourmaline's lead program, TOUR006, is an anti-IL-6 antibody with best-in-class properties including high binding affinity to IL-6 and a naturally long half-life which potentially enable delivery as a low-volume, infrequently administered, subcutaneous injection. Tourmaline's strategy is to develop TOUR006 in diseases characterized by inflammation and autoantibodies, where IL-6 pathway inhibitors have been underexplored despite compelling signals of clinical benefit. Following this strategy, Tourmaline's lead indication is TED, also known as Graves' ophthalmopathy, an autoimmune disease characterized by inflammation and disfigurement around the eye which can be sight-threatening in severe cases. Off-label use of IL-6 pathway inhibitors in TED has been well-documented in literature demonstrating strong evidence of the ability of such inhibitors to reduce inflammation, eye-bulging, and key biomarkers such as pathogenic autoantibodies. Tourmaline plans to initiate a Phase 2b trial of TOUR006 for the treatment of TED in the third quarter of 2023. The planned second indication for TOUR006 is ASCVD, which continues to be a leading cause of death globally despite the wide availability of oral therapies. IL-6 has been implicated as a promising drug target for addressing ASCVD by over two decades of clinical, genetic, and experimental research. Tourmaline plans to initiate a Phase 2 trial of TOUR006 in ASCVD in 2024. Tourmaline plans to seek additional indication opportunities for TOUR006 among the wide array of diseases where IL-6 inhibition has been validated. TOUR006 was licensed by Tourmaline from Pfizer Inc. in May 2022. Pfizer had completed Phase 1 and Phase 2 trials in other indications with a safety profile consistent with the anti-IL-6 and anti-IL-6R class.

**About the Merger**

Under the terms of the merger agreement, Tourmaline stockholders (including Tourmaline stockholders issued shares in the private placement) will receive shares of Talaris common stock upon the consummation of the Merger. In addition to their shares of Talaris common stock, Talaris stockholders will participate in a cash dividend of up to approximately $64.8 million in connection with, and prior to, the Merger.

Tourmaline stockholders immediately prior to the Merger (including Tourmaline stockholders issued shares in the private placement) are expected to own approximately 78.7% of the combined company and Talaris stockholders immediately prior to the Merger are expected to own approximately 21.3% of the combined company, each on a fully diluted basis. The percentage of the combined company that each company's former stockholders are expected to own may be adjusted based on Talaris' net cash at closing (subject to a collar) and the proceeds from the sale of certain of Talaris' legacy assets prior to closing.

The Merger has been unanimously approved by the Board of Directors of both companies and both Boards of Directors have recommended that their respective stockholders approve the matters regarding the Merger.  The Merger is expected to close in the fourth quarter of 2023, subject to approvals by stockholders of each company and other customary closing conditions.

In connection with the Merger, directors, officers and certain stockholders of each of Tourmaline and Talaris have executed support agreements, pursuant to the terms of which they have agreed to vote all of their shares of capital stock in favor of the Merger or the issuance of Talaris shares in the Merger, as applicable.

Jefferies, Piper Sandler, Guggenheim Securities, and Truist Securities are serving as placement agents to Tourmaline in connection with the private placement and Cooley LLP is serving as legal counsel to Tourmaline in connection with the private placement and the Merger.  SVB Securities is serving as exclusive financial advisor to Talaris and Goodwin Procter LLP is serving as legal counsel to Talaris.

**Management and Organization**

Following the Merger, the combined company will be led by current members of the Tourmaline leadership team, including:

- Sandeep Kulkarni, MD, Chief Executive Officer
- Yung Chyung, MD, Chief Medical Officer
- Brad Middlekauff, JD, Chief Business Officer and General Counsel
- Susan Dana Jones, PhD, Chief Technology Officer
- Ryan Iarrobino, Senior Vice President, Product Development
- Kevin Johnson, PhD, Chief Regulatory Officer
- Dora Rau, Senior Vice President, Head of Quality

The merger agreement provides that the Board of Directors of the combined company will be composed of seven board members; five board members, including the CEO of Tourmaline, will be named by Tourmaline and two board members will be named by Talaris.

**Insiders' Interests in the Proposed Transaction**

23.     Talaris insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Talaris.

24.     Notably, certain Company insiders have secured positions for themselves with the surviving corporation. For example, two Talaris designees will be appointed to serve on the board of the combined company following completion of the merger.

25.     Moreover, Company insiders stand to reap substantial financial benefits for securing the deal with Tourmaline.  Under the terms of the Merger Agreement, all Company restricted share units ("RSUs") will vest and convert into the right to receive cash payments, as set forth in the following table:

| Name | Number of Talaris RSUs Held | Value of Talaris RSUs |
|---|---|---|
| **Executive Officers** | | |
| Mary Kay Fenton | 80,000 | $ 247,520 |
| Nancy Krieger | 80,000 | $ 274,520 |
| Scott Requadt | 80,000 | $ 247,520 |
| Michael Zdanowski | 120,000 | $ 371,280 |

## The Proxy Statement Contains Material Misstatements and Omissions

26.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Company management's financial projections for Tourmaline; (ii) the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor Leerink; and (iii) Leerink's potential conflicts of interest.  Accordingly, Talaris stockholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning Company Management's Projections for Tourmaline*

27.     The Proxy Statement omits material information with respect to Company management's  financial projections for Tourmaline.

28.     For example, the Proxy Statement fails to disclose the line items underlying Net Income and Unlevered Free Cash Flow

29.     The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act

***Material Omissions Concerning Leerink's Financial Analyses***

30.     The Proxy Statement also describes Leerink's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Leerink's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Talaris's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Leerink's fairness opinions in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Talaris's stockholders.

31.     With respect to Leerink's *Valuation Analysis--Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the estimated present value of the stand-alone, unlevered, after-tax free cash flows that Tourmaline was forecasted to generate from September 30, 2023, through December 31, 2043; and (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 10% to 12%.

32.     The omission of this information renders the statements in the "Opinion of Talaris' Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Leerink's Potential Conflicts of Interest***

33.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest of Leerink.

34.     For example, the Proxy Statement fails to disclose whether Leerink has provided any services to Tourmaline in the prior two years and, if so, the amount of compensation received by Leerink for these services.

35.     The omission of this information renders the statements in the "Opinions of Talaris' Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

36.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and the other stockholders of Talaris will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

37.     Plaintiff repeats all previous allegations as if set forth in full.

38.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

39.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresents and/or omits material facts, including material information about (i) Company management's financial projections; (ii) the inputs and assumptions underlying Leerink's financial analyses; and (iii) Leerink's potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

41.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

42.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43.     Plaintiff repeats all previous allegations as if set forth in full.

44.     The Individual Defendants acted as controlling persons of Talaris within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Talaris, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

47.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act.  As a direct and proximate result of defendants' conduct, Talaris stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Talaris, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Talaris stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  September 21, 2023

**WEISS LAW**

By

Michael Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel: (404) 692-7910
Fax: (212) 682-3010
Email: mrogovin@weisslawllp.com

*Attorneys for Plaintiff*